# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

KELLY BRYANT and
HOLLIE BRYANT,

        Plaintiffs,

v.

SAGAMORE INSURANCE COMPANY,

        Defendant.

Case No. CIV-13-240-RAW

## ORDER & OPINION[1]

Plaintiffs Kelly Bryant and Hollie Bryant (hereinafter referenced individually as "Kelly" and "Hollie") brought this action against Defendant Sagamore Insurance Company (hereinafter "Sagamore") on May 31, 2013 seeking damages for breach of contract and bad faith. The court previously denied Plaintiffs' motion for summary judgment [Docket No. 41] as to the bad faith claims. The court now addresses Sagamore's motion for summary judgment [Docket No. 39] as to the bad faith claims.[2]

Plaintiffs claim that Sagamore acted unreasonably and in bad faith when it denied coverage under an automobile policy purchased by Kelly on a car driven by Hollie even though Kelly specifically excluded Hollie as a covered driver. Plaintiffs rely on a recent Oklahoma Supreme Court decision finding that some, perhaps many, named driver exclusions are inconsistent with public policy. Sagamore argues that at the time it denied coverage, the recent

---

[1]For clarity and consistency herein, when the court cites to the record, it uses the docket, exhibit and page numbers assigned by CM/ECF.

[2]The court summary judgment motions remain pending as to the breach of contract claims. The court will enter a separate order as to the breach of contract claims once it has reached a decision.

Oklahoma decision was not binding precedent and that under the current law, the named driver exclusion was a valid and reasonable basis to deny coverage. Sagamore further argues that Kelly's lack of cooperation was a second independent basis for its denial of coverage. For the reasons set forth below, the court now grants Sagamore's motion for summary judgment as to the bad faith claims.

**UNDISPUTED MATERIAL FACTS**[3]

On June 29, 2011, Hollie was driving a 2003 Ford Mustang and had an accident with Cuba Lawrence. Docket No. 40, Exh. 13 (Collision Report). The Mustang was insured by Sagamore under a policy purchased by Kelly. Docket No. 40, Exh. 2, p. 23 (Kelly Dep.); Docket No. 40, Exh. 7, p. 10 (Revised Declarations); Docket No. 40, Exh. 1, pp. 1-5 (Application); Docket No. 40, Exh. 3 (Policy). Hollie was an excluded driver on the policy. Docket No. 40, Exh. 2, pp. 23, 24, 26 and 28 (Kelly Dep.); Docket No. 40, Exh. 7, p. 10 (Revised Declarations); Docket No. 40, Exh. 1, p. 1-5 (Application). Kelly excluded Hollie from his policy so that his policy premium would be less expensive. Docket No. 40, Exh. 2, pp. 23-24 (Kelly Dep.).

The policy provides that "any person who is specifically excluded is not an insured person." Docket No. 40, Exh. 3, p. 5 (Policy). The policy also provides: "We do not provide coverage for bodily injury or property damage . . . resulting from the use of a car by a person

---

[3]"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003)(citation omitted). Additionally, the court "need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

specifically excluded." Docket No. 40, Exh. 3, p. 5-6 (Policy). The policy further requires

cooperation from the insured:

> A person claiming any coverage under this policy must also:
> (1) cooperate with us and assist us in any matter concerning a claim or suit, including presence at a trial.
> (2) send us promptly any legal papers received relating to any claim or suit.
> * * *
> (6) submit to an examination under oath if required by us.
> (7) upon our request, allow us to obtain a written or recorded statement concerning the circumstances of the claim and any damages claimed.
> We shall not be liable for damages or costs assessed as a result of or due to an insured person's failure to cooperate with us under the terms of this policy, or for an insured person's failure to appear at trial, in court hearings, or at other court-ordered conferences when the insured person's attendance is necessary for defending the interests of you, the insured person, or us.

Docket No. 40, Exh. 3, p. 16 (Policy).

Kelly contacted his insurance agent on June 30, 2011 to report the accident. Docket No.

40, Exh. 2, pp. 32-33 (Kelly Dep.). Kelly called Sagamore on July 8 and 15, 2011.[4] Docket No.

40, Exh. 2, pp. 30-31, (Kelly Dep.). Cuba Lawrence submitted a claim against the policy.

Docket No. 40, Exh. 4 (Claim Report).

Sagamore sent a reservation of rights letter to Kelly dated July 11, 2011 to the address

Kelly listed on his insurance application. Docket No. 40, Exh. 16 (July 11, 2011 letter); Docket

No. 40, Exh. 1 (Application). Kelly received the letter. Docket No. 40, Exh. 2, p. 40 (Kelly

Dep.). Sagamore called Kelly and did not reach him on July 15, 2011. Docket No. 40, Exh. 4, p.

18 (Claim Report). Sagamore called Kelly on July 20, 2011 and left a message. Docket No. 40,

Exh. 4, p. 17 (Claim Report).

---

[4]Kelly has argued that he understood the claim was denied at this juncture. It is clear from the Sagamore communications that followed, however, that the coverage decision had not yet been made. Kelly's mistaken assertion that the claim was denied does not make it so, nor does it negate his cooperation obligation under the policy.

Sagamore sent a second reservation of rights letter to Kelly dated August 23, 2011 to the address listed on his insurance application. Docket No. 40, Exh. 17 (August 23, 2011 letter). Sagamore noted in the letter that he had not responded to correspondence and that his cooperation was needed to resolve the claim and required under the policy. Id. On September 7, 2011, Sagamore sent an independent adjuster to Kelly's home to get a statement. Docket No. 40, Exh. 4, p. 11 (Claim Report). Kelly was not home, so the adjuster left a card. Id.

On September 21, 2011, Sagamore's attorney, Mr. Babb sent a letter via Federal Express to Kelly at the address listed on his application and at his home address. Docket No. 40, Exh. 18 (September 21, 2011 letter). The letter noted Plaintiffs' failure and/or refusal to respond to Sagamore's inquiries and the policy's cooperation requirement, including the requirement to submit to an examination under oath. Id. Mr. Babb informed Kelly that an examination under oath was scheduled for both Plaintiffs at September 30, 2011 and that if they failed to appear, Sagamore could decline coverage due to his failure to cooperate. Id. Mr. Babb also stated that if they could not appear on that date, to contact him to schedule the exams at a "mutually convenient time and date." Id. Plaintiffs did not appear. Docket No. 40, Exh. 19 (September 30, 2011 Transcript); Docket No. 40, Exh. 2, p. 51 (Kelly Dep.).

In a letter dated October 19, 2011, Sagamore denied coverage of the claim on two bases: (1) Hollie was an excluded driver on the policy; (2) Kelly's failure to appear for examination under oath and cooperate in the investigation of the claim. Docket No. 40, Exh. 23 (October 19, 2011 letter). The letter included the statement: "if you believe this decision has been made in error, please contact us and provide specific information which you believe would provide coverage." Id. Kelly did not respond to this request.

**BAD FAITH CLAIMS**

"Every insurance contract carries with it the duty to act fairly and in good faith in discharging its contractual responsibilities." Garnett v. Government Employees Ins. Co., 186 P.3d 935, 944 (Okla. 2008). In Oklahoma, "a tort claim for bad faith and a claim for breach of contract are separate and independent bases for recovery." Ball v. Wilshire Ins. Co., 221 P.3d 717, 724 n.40 (Okla. 2009)(citation omitted). "Where the tort claim is factually based on a coverage dispute as to which no *controlling* legal authority provides an indisputable resolution, a determination of the coverage dispute is unnecessary because the elements of unreasonableness and bad faith are not present as a matter of law." Id. (emphasis added).

Plaintiffs carry "the burden of proof and must plead all the elements of the intentional tort." Garnett, 186 P.3d at 944.

> The elements of a bad faith claim against an insurer for delay in payment of first-party[5] coverage are: (1) claimant was entitled to coverage under the insurance policy at issue; (2) the insurer had no reasonable basis for delaying payment; (3) the insurer did not deal fairly and in good faith with the claimant; and (4) the insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury.

Ball, 221 P.3d at 724. "The absence of any one of these elements defeats a bad faith claim." Id.

Before the bad faith claims may be submitted to a jury, this court "must first determine as a matter of law, under the facts most favorably construed against the insurer, whether the insurer's conduct may be reasonably perceived as tortious." Garnett, 186 P.3d at 944 (emphasis added). "The critical question in a bad faith tort claim is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding

---

[5]As Sagamore argues, Hollie is not a first-party claimant. Nevertheless, because the bad faith claims fail as a matter of law on the second element, the court need not address whether she can recover under a theory of bad faith as a third-party beneficiary.

[or delaying] payment under the policy.'"  <u>Ball</u>, 221 P.3d at 725.

"If there is a legitimate dispute concerning coverage or <u>no conclusive precedential legal authority requiring coverage</u>, withholding or delaying payment is not unreasonable or in bad faith."  <u>Id</u>. (emphasis added).  "The tort of bad faith hence does not prevent an insurer from denying, resisting or litigating any claim as to which the insurer has a reasonable defense."  <u>Id</u>. In other words, an insurer may, without breaching its duty of good faith, "resort to a judicial forum to settle legitimate disputes as to the validity or amount of an insurance claim."  <u>Garnett</u>, 186 P.3d at 944.

**ANALYSIS**

Plaintiffs argue that Sagamore had no reasonable basis to deny the claim, as the Oklahoma Supreme Court decided <u>Mulford v. Neal</u>, 264 P.3d 1173 (Okla. 2011) on March 15, 2011, which held that named driver exclusions issued to both parents of a minor driver are unenforceable, as they are inconsistent with the clear public policy in Oklahoma's compulsory insurance law.[6]  <u>Mulford</u>, however, was not published until December of 2011, after Sagamore's denial decision.[7]

---

[6]In this case, Sagamore was unaware that Hollie's mother's insurance covered her.  Had Kelly cooperated in the claim investigation, Sagamore may have learned this fact.

[7]After <u>Mulford</u> was published, Sagamore paid Cuba Lawrence the policy limits. Plaintiffs have argued that the court should disregard Federal Rule of Evidence 408 and look to Florida law to find that payment of the policy limits establishes the breach and bad faith.  Even if the court were to accept such an argument as to the breach, it does not establish bad faith.  As noted above, Plaintiffs have the burden of proving each element.  Plaintiffs have not met that burden.

Recognizing that until an opinion is published it has no precedential effect, on July 1, 2011, an Oklahoma Civil Appeals Court held that "the compulsory insurance statutes, as well as Oklahoma Supreme Court precedent, continue to uphold the validity of an exclusion from coverage of a named driver." Rodriguez v. Gutierrez-Perez, 273 P.3d 69 (Okla.Civ.App. 2011). The court need not venture further into this issue. An Oklahoma appellate court agreed with Sagamore's attorney. Clearly, Sagamore had a reasonable basis to deny the claim on the basis of the named driver exclusion. At the very least, at the time of the denial, no *controlling* legal authority provided an indisputable resolution. Ball, 221 P.3d at 724 n.40. Plaintiffs have not met their burden of proof as to the bad faith claims.

Moreover, Sagamore repeatedly attempted to reach Kelly with the contact information he provided on his application and wherever they could find him through their own investigation. Kelly failed to respond to any of Sagamore's messages or letters.[8] Kelly failed to appear for the examination under oath. Under the terms of the policy, Sagamore had a reasonable basis to deny coverage for failure to cooperate. Even if the court finds that whether Kelly cooperated is a question of fact for the jury, Sagamore had a reasonable basis to believe that he did not cooperate, and thus a reasonable basis to deny coverage under the policy. Plaintiffs have not met their burden of proof as to the bad faith claims.

---

[8]Kelly has argued that he may not have received all of the letters at the address he provided to Sagamore, which was his father's address and next to his own. In Oklahoma, "[w]hen a letter is placed in the mail system bearing a correct address and sufficient postage to reach its destination, a rebuttable presumption arises that the letter did in fact reach the addressee. *In the absence of sufficient rebuttable evidence, the presumption prevails*." Visteon Corp. v. Yazel, 91 P.3d 690, 700 (Okla.Civ.App. 2004)(citation omitted)(emphasis in original). Kelly has not provided sufficient rebuttable evidence. Furthermore, it was Kelly's duty to provide Sagamore with his correct address.

**CONCLUSION**

Sagamore had a reasonable basis to deny the coverage under the policy. Accordingly, Sagamore's motion for summary judgment [Docket No. 39] is hereby GRANTED as to the bad faith claims. Plaintiffs' bad faith claims are dismissed.

IT IS SO ORDERED this 21st day of April, 2014.

**Dated this 21st day of April, 2014.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma