# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

KELLY BRYANT and
HOLLIE BRYANT,

        Plaintiffs,

v.

SAGAMORE INSURANCE COMPANY,

        Defendant.

Case No. CIV-13-240-RAW

## ORDER & OPINION[1]

Plaintiffs Kelly Bryant and Hollie Bryant (hereinafter referenced individually as "Kelly" and "Hollie") brought this action against Defendant Sagamore Insurance Company (hereinafter "Sagamore") on May 31, 2013 seeking damages for breach of contract and bad faith. As to the bad faith claims, the court previously denied Plaintiffs' and granted Sagamore's motion for summary judgment. The breach of contract claims remain.

Plaintiffs argue that Sagamore breached the insurance contract when it denied coverage for an accident that happened when Hollie was driving a vehicle that was covered under a policy purchased by Kelly. Hollie was specifically excluded on the policy. Plaintiffs argue that under a recent Oklahoma Supreme Court decision, the named driver exclusion was invalid. Sagamore argues that at the time it denied coverage, the named driver exclusion was valid. Sagamore further argues that Kelly's failure to cooperate with Sagamore during its investigation is a second independent basis for denying coverage. For the reasons set forth below, as to the remaining claims for breach of contract, the court now denies Plaintiffs' motion for summary judgment

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the docket, exhibit and page numbers assigned by CM/ECF.

[Docket No. 41] and grants Sagamore's motion for summary judgment [Docket No. 39].

**UNDISPUTED MATERIAL FACTS**[2]

On June 29, 2011, Kelly's teenage daughter Hollie was driving a 2003 Ford Mustang and had an accident with Cuba Lawrence. Docket No. 40, Exh. 13 (Collision Report). The Mustang was insured by Sagamore under a policy purchased by Kelly. Docket No. 40, Exh. 2, p. 23 (Kelly Dep.); Docket No. 40, Exh. 7, p. 10 (Revised Declarations); Docket No. 40, Exh. 1, pp. 1-5 (Application); Docket No. 40, Exh. 3 (Policy). Hollie was an excluded driver on the policy. Docket No. 40, Exh. 2, pp. 23, 24, 26 and 28 (Kelly Dep.); Docket No. 40, Exh. 7, p. 10 (Revised Declarations); Docket No. 40, Exh. 1, p. 1-5 (Application). Kelly excluded Hollie from his policy so that his policy premium would be less expensive. Docket No. 40, Exh. 2, pp. 23-24 (Kelly Dep.).

The policy provides that "any person who is specifically excluded is not an insured person." Docket No. 40, Exh. 3, p. 5 (Policy). The policy also provides: "We do not provide coverage for bodily injury or property damage . . . resulting from the use of a car by a person specifically excluded." Docket No. 40, Exh. 3, p. 5-6 (Policy). The policy further requires cooperation from the insured:

---

[2]"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). "Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." Harvey Barnett, Inc. v. Shidler, 338 F.3d 1125, 1136 (10th Cir. 2003)(citation omitted). Additionally, the court "need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

> A person claiming any coverage under this policy must also:
> (1) cooperate with us and assist us in any matter concerning a claim or suit, including presence at a trial.
> (2) send us promptly any legal papers received relating to any claim or suit.
>                                    * * *
> (6) submit to an examination under oath if required by us.
> (7) upon our request, allow us to obtain a written or recorded statement concerning the circumstances of the claim and any damages claimed.
>
> We shall not be liable for damages or costs assessed as a result of or due to an insured person's failure to cooperate with us under the terms of this policy, or for an insured person's failure to appear at trial, in court hearings, or at other court-ordered conferences when the insured person's attendance is necessary for defending the interests of you, the insured person, or us.

Docket No. 40, Exh. 3, p. 16 (Policy).

Kelly contacted his insurance agent on June 30, 2011 to report the accident. Docket No. 40, Exh. 2, pp. 32-33 (Kelly Dep.). Kelly called Sagamore on July 8 and 15, 2011.[3] Docket No. 40, Exh. 2, pp. 30-31, (Kelly Dep.). Cuba Lawrence submitted a claim against the policy. Docket No. 40, Exh. 4 (Claim Report).

Sagamore sent a reservation of rights letter to Kelly dated July 11, 2011 to the address Kelly listed on his insurance application. Docket No. 40, Exh. 16 (July 11, 2011 letter); Docket No. 40, Exh. 1 (Application). Kelly received the letter. Docket No. 40, Exh. 2, p. 40 (Kelly Dep.). Kelly did not respond. Id. Sagamore called Kelly and did not reach him on July 15, 2011. Docket No. 40, Exh. 4, p. 18 (Claim Report). Sagamore called Kelly on July 20, 2011 and left a message. Docket No. 40, Exh. 4, p. 17 (Claim Report). Kelly did not respond. Id.

Sagamore sent a second reservation of rights letter to Kelly dated August 23, 2011 to the address listed on his insurance application. Docket No. 40, Exh. 17 (August 23, 2011 letter).

---

[3] Kelly has argued that he understood the claim was denied at this juncture. It is clear from the Sagamore communications that followed, however, that the coverage decision had not yet been made. Kelly's mistaken belief that the claim was denied does not make it so, nor does it negate his cooperation obligation under the policy.

Sagamore noted in the letter that he had not responded to correspondence and that his cooperation was needed to resolve the claim and required under the policy. Id. Kelly does not dispute Sagamore sent this letter, and he did not respond. Docket No. 40, Exh. 2, pp. 46-47 (Kelly Dep.); Docket No. 40, Exh. 4, pp. 1-15 (Claim Report). On September 7, 2011, Sagamore sent an independent adjuster to Kelly's home to get a statement. Docket No. 40, Exh. 4, p. 11 (Claim Report). Kelly was not home, so the adjuster left a card. Id. Kelly did not respond. Id.

On September 21, 2011, Sagamore's attorney, Mr. Babb, sent a letter via Federal Express to Kelly at the address listed on his application and at his home address. Docket No. 40, Exh. 18 (September 21, 2011 letter). The letter noted Plaintiffs' failure and/or refusal to respond to Sagamore's inquiries and the policy's cooperation requirement, including the requirement to submit to an examination under oath. Id. Mr. Babb informed Kelly that an examination under oath was scheduled for both Plaintiffs at September 30, 2011 and that if they failed to appear, Sagamore could decline coverage due to his failure to cooperate. Id. Mr. Babb also stated that if they could not appear on that date, to contact him to schedule the exams at a "mutually convenient time and date." Id. Plaintiffs did not appear. Docket No. 40, Exh. 19 (September 30, 2011 Transcript); Docket No. 40, Exh. 2, p. 51 (Kelly Dep.).

In a letter dated October 19, 2011, Sagamore denied coverage of the claim on two bases: (1) Hollie was an excluded driver on the policy; (2) Kelly's failure to appear for examination under oath and cooperate in the investigation of the claim. Docket No. 40, Exh. 23 (October 19, 2011 letter). The letter included the statement: "if you believe this decision has been made in error, please contact us and provide specific information which you believe would provide coverage." Id. Kelly received the letter and did not respond. Docket No. 40, Exh. 2, pp. 51-53 (Kelly Dep.).

4

**BREACH OF CONTRACT CLAIMS**

To recover on a breach of contract theory, a plaintiff must prove: "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834, 843 (Okla. 2001). The relationship between Sagamore and Kelly is contractual in nature.[4] See First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md., 928 P.2d 298, 302 n. 6 (Okla. 1996).

In Oklahoma, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." 15 OKLA. STAT. § 154. When the policy language is clear and unambiguous, "the employed language is accorded its ordinary, plain meaning and enforced so as to carry out the parties' intentions." Bituminous Cas. Corp. v. Cowen Constr., Inc., 55 P.3d 1030, 1033 (Okla. 2002). The court is to be "mindful that an insured and insurer are free to contract for that quantum of coverage which one is willing to extend and the other is willing to purchase." Id.

The parties are bound by the terms of the policy, and the court will not rewrite it "to make for either party a better contract than the one which was executed." Id. "Courts must not torture the policy language in order to 'create ambiguities where none exist.'" Id. at 1035 (citation omitted). "The rule that policies are to be construed against the insurer has no application where the provisions are susceptible of only one reasonable construction." Certain Underwriters at Lloyds London v. B3, Inc., 262 P.3d 397, 400 (Okla. App. Div. 1 2011).

---

[4]Hollie is not a party to the contract. Moreover, as she was specifically excluded as a driver, the court doubts that either Kelly or Sagamore intended her to benefit from the policy to the extent that she could enforce the contract as a third party beneficiary and recover on a breach of contract theory. Nevertheless, as there was no breach, the court need not address this issue.

**ANALYSIS**

The policy is clear and unambiguous. It excludes Hollie. It requires Kelly's cooperation. In a letter dated October 19, 2011, Sagamore denied coverage of the claim submitted by Cuba Lawrence on Kelly's policy based on the following: 1) Hollie was an excluded driver on the policy, and 2) Kelly failed to appear for the examination under oath and to cooperate in the investigation of the claim as required under the policy. If either of these bases are valid under the policy, then Sagamore did not breach it.

**Named Driver Exclusion**

The Oklahoma Supreme Court decided Mulford v. Neal, 264 P.3d 1173 (Okla. 2011) on March 15, 2011, holding that named driver exclusions issued to both parents of a minor driver are unenforceable, as they are inconsistent with the clear public policy in Oklahoma's compulsory insurance law.[5] Mulford, however, was not published until December of 2011, after Sagamore's denial decision.[6]

Recognizing that until an opinion is published it has no precedential effect, on July 1, 2011, an Oklahoma Civil Appeals Court held that "the compulsory insurance statutes, as well as Oklahoma Supreme Court precedent, continue to uphold the validity of an exclusion from coverage of a named driver." Rodriguez v. Gutierrez-Perez, 273 P.3d 69 (Okla.Civ.App. 2011).

---

[5] In this case, Sagamore was unaware that Hollie's mother's insurance covered her. Had Kelly cooperated in the claim investigation, Sagamore may have learned this fact.

[6] After Mulford was published, Sagamore paid Cuba Lawrence the policy limits. Plaintiffs have argued that the court should disregard Federal Rule of Evidence 408 and look to Florida law to find that payment of the policy limits establishes the breach. The court is not convinced. Sagamore paid the policy limits to Cuba Lawrence after Mulford was published because it determined that under the newly precedential decision, he may be entitled to payment as an innocent third party. That payment does not establish a breach in October of 2011 when Sagamore did not know if Mulford would ever become precedential.

Until Mulford was published, it was not controlling. At the time of the denial in October of 2011, Mulford had not been published; thus, the named driver exclusion was valid. Sagamore did not breach the contract when it denied coverage in October of 2011 based on the named driver exclusion.[7]

**Kelly's Failure to Cooperate**

As noted above, Kelly has argued that when he spoke with his agent and Sagamore in July, he was told that there was no coverage because Hollie was excluded. For purposes of the motions, the court accepts this as true. Nevertheless, the subsequent correspondence made clear that Sagamore was investigating the claim. Kelly had an obligation under the contract to cooperate, and his failure to do so was a valid basis for denial of a claim.

Sagamore repeatedly attempted to reach Kelly with the contact information he provided on his application and wherever they could find him through their own investigation. Kelly failed to respond to any of Sagamore's messages or letters.[8] Kelly failed to appear for the

---

[7]Moreover, it is not abundantly clear that Mulford invalidates the named driver exclusions in Kelly's policy. The Mulford court held that named driver exclusions issued to both parents of a minor driver are unenforceable as against "clear public policy in Oklahoma's compulsory insurance law." Mulford, 264 P.3d at 1183. As is now known, Hollie was covered under a policy purchased by her mother. The Mulford court stated: "We decline to act today as a Legislature and determine under what conditions an *unemancipated teenager with a driver's license* could be properly excluded from the parent's motor vehicle insurance policy." Id. (emphasis in original). It could be determined that divorced parents may negotiate which of them will carry insurance for their licensed teenager leaving the other with the ability to insure his or her vehicle without adding coverage for that teenager.

[8]Kelly has argued that he may not have received all of the letters at the address he provided to Sagamore, which was his father's address and next to his own. In Oklahoma, "[w]hen a letter is placed in the mail system bearing a correct address and sufficient postage to reach its destination, a rebuttable presumption arises that the letter did in fact reach the addressee. *In the absence of sufficient rebuttable evidence, the presumption prevails*." Visteon Corp. v. Yazel, 91 P.3d 690, 700 (Okla.Civ.App. 2004)(citation omitted)(emphasis in original). Kelly has not provided sufficient rebuttable evidence. Furthermore, it was Kelly's duty to

7

examination under oath.  Under the terms of the policy, Sagamore had a valid basis to deny coverage for failure to cooperate.  Sagamore did not breach the contract when it denied coverage based on Kelly's failure to cooperate.

**CONCLUSION**

Accordingly, Sagamore's motion for summary judgment [Docket No. 39] is hereby GRANTED as to the breach of contract claims.  Plaintiffs' motion for summary judgment [Docket No. 41] is DENIED as to the breach of contract claims.  Plaintiffs' breach of contract claims are dismissed.  All remaining motions are hereby DENIED as MOOT.

IT IS SO ORDERED this 23rd day of April, 2014.

Ronald A. White
United States District Judge
Eastern District of Oklahoma

---

provide Sagamore with his correct address.